## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

| | |
|---|---|
| WILLIAM R. STULTZ, III, | |
| Plaintiff, | |
| vs. | CIV. ACTION NO._____ |
| EMPLOYERS MUTUAL CASUALTY COMPANY, doing business as EMC Insurance, and STEVE PHILLIPS, | **JURY TRIAL DEMANDED** |
| Defendants. | |

## COMPLAINT FOR DAMAGES

COMES NOW Plaintiff William R. Stultz, III, by and through the undersigned Counsel of Record, and hereby files this Complaint for Damages against Defendants Employers Mutual Casualty Company, doing business as EMC Insurance, and Steve Phillips, respectfully showing the Court as follows:

## I.  JURISDICTION AND VENUE

1.

Plaintiff William R. Stultz, III, brings the above-captioned case pursuant to: (a) 29 U.S.C. §§ 621, *et seq.*, Age Discrimination in Employment Act of 1967, as amended, ("ADEA") for age discrimination; (b) 42 U.S.C. §§ 2000e, *et seq.*, Title

VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §§ 2000e, *et seq.*, ("Title VII") for race discrimination; (c) 42 U.S.C. § 1981, the Civil Rights Act of 1866, as amended by the Civil Rights Act of 1981 ("Section 1981") for race discrimination; and (d) the laws of the State of Georgia for intentional infliction of emotional distress, as well as negligent retention and supervision.

2.

The United States District Court for the Northern District of Georgia ("Court") is vested with original jurisdiction pursuant to 28 U.S.C. § 1331 because the above-captioned complaint involves the laws of the United States and with supplemental jurisdiction pursuant to 28 U.S.C. § 1367 because the State law claims arise from the same nucleus of operative facts as the Federal law claims.

3.

Venue is proper pursuant to 28 U.S.C. § 1391 because a substantial part of the events giving rise to the asserted claims occurred in, the Northern District of Georgia, Atlanta Division, and the unlawful conduct forming the basis of the above-captioned complaint occurred in the Northern District of Georgia, Atlanta Division.

4.

Prior to commencing the above-captioned case, Plaintiff satisfied all administrative prerequisites to institute this action. Specifically, Plaintiff timely

filed a Charge of Discrimination with the Equal Employment Opportunity ("EEOC")

within one-hundred-and-eighty (180) calendar days from the day the discrimination

took place (Charge No. 410-2020-08392) and Plaintiff has timely commenced the

above-captioned case within ninety (90) days of receipt of the Notice of Right to

Sue, dated February 2, 2021.

## II.  PARTIES

5.

Plaintiff William R. Stultz, III, ("Stultz" or "Plaintiff") is a fifty-nine (59) year

old African-American male, who is a citizen of the United States, resident of the

State of Georgia, subject to this Court's jurisdiction, and entitled to bring the claims

asserted in the above-captioned case.

6.

At all relevant times, Stultz was an "employee" within the meaning of, among

other laws, the ADEA, 29 U.S.C. § 630, and Title VII, 42 U.S.C. § 2000e(f).

7.

Defendant Employers Mutual Casualty Company, doing business as EMC Insurance, ("EMC") is an Iowa insurance company providing insurance products affecting inter-state commerce through its branches, agents, representatives, and employees located in several States and subject to the Court's jurisdiction with a principle office located at 717 Mulberry Street, Des Moines, Iowa 50306-0712.

8.

EMC operates a branch located at 800 Concourse Parkway, Suite 100, Birmingham, Alabama, which services the State of Georgia.

9.

EMC is an "employer" with the meaning of, among other laws, Title VII, 42 U.S.C. § 2000e, and the ADEA, 29 U.S.C. § 630, with more than twenty (20) employees for each working day in each of the twenty (20) or more calendar weeks in the current or preceding calendar year while engaging in inter-state commerce.

10.

EMC may be served with process through Kevin T. Shires, Registered Agent, 5830 Bond Street, Suite 300, Cumming, Georgia 30040.

11.

Defendant Steve Phillips ("Phillips") is and was, at all relevant times, a citizen of the United States, resident of the State of Mississippi, and subject to the jurisdiction of this Court.

12.

Phillips was, at all relevant times, EMC's Risk Improvement Manager, involved in the day-to-day operation of EMC and regularly exercised authority to: (a) hire and terminate employees, (b) determine the schedules and assignments for employees, (c) supervise employees, and (d) otherwise control operation of EMC's Birmingham Branch.

13.

At all relevant times, Phillips supervised Stultz while participating in the unlawful discriminatory, retaliatory, and tortious conduct described herein.

14.

Phillips may be served with process at the EMC's Birmingham Branch located at 800 Concourse Parkway, Suite 100, Birmingham, Alabama 35201-1568.

## III.  FACTUAL ALLEGATIONS

### 15.

Stultz re-alleges and incorporates each and every preceding Paragraph of the above-captioned complaint as if set forth fully herein.

### 16.

EMC is engaged in the business of providing insurance from branches, agents, representatives, and employees located throughout the United States, including, but not limited to, the Birmingham Branch, where representatives provide insurance products to business entities in several States.

### 17.

Stultz, fifty-nine (59) year old African-American male, was formerly employed by EMC as a Senior Risk Improvement Representative operating remotely from Atlanta, Georgia.

### 18.

Stultz graduated from the University of Toledo, where Stultz received a Bachelor of Science (BSCEng) in Civil Engineering.

19.

In addition to a B.S. in Civil Engineering, Stultz possesses several professional licenses and certifications, including, but not limited to, Certified Safety Professional (CSP) Designation from the Board of Certified Safety Professionals, Associate Risk Management (ARM) Designation from the Association of Risk Management, and Certified Drone Pilot and Commercial Insurance Applications from the Federal Aviation Administration.

20.

Prior to working for EMC, Stultz held several professional positions in the insurance industry, including, but not limited to, a Risk Control Supervisor and Specialist with the St. Paul Companies, Risk Control Manager with Travelers, and Senior Risk Control Representative with Westfield—all of these positions were located in Atlanta, Georgia.

21.

Beginning in or about June 2005, Stultz was employed as a Senior Risk Improvement Representative and Specialist, who operated remotely from and serving the Atlanta Metropolitan area.

22.

As EMC's Senior Risk Improvement Representative and Specialist, Stultz was responsible for, *inter alia*, loss control services for renewal and prospective customers (managing assets), large lines renewal and quarterly branch meetings (meeting presentations), launching and innovating diverse business classifications and partners within the territory (leading drone program), facilitating risk improvement conferences and presenting topics, as well as other tasks and assignments associated with providing insurance products and services.

23.

While employed at EMC, Stultz diligently performed all tasks while meeting or exceeding all performance expectations.  For example, the vast majority of Stultz's performance reviews were either "exceeded the expectations" or "meet the expectations."  Moreover, Stultz consistently received positive feedback and responses from managers related to Stultz's presentations, account activities, and program development, including, but not limited to, EMC's drone program.

24.

In Stultz's 2019 Final Review, Paulette J. Johnson ("Johnson") (African-American), EMC Regional Vice President, rated Stultz as "Exceeds Expectations" due to creating new and better ways for EMC to be successful, consistently achieving results even under tough circumstances, exhibiting honesty, integrity, and authenticity, gaining productive insight into personal strengths and weaknesses, building strong customer relationships, and relating for people, and building partnerships.

25.

During the 2019 Year, the Birmingham Branch transitioned from being the poorest performing branch to becoming a top performer and, thus, Johnson declared it "The Year of the Birmingham Branch" and "The Year of Bill Stultz"—Stultz was the top performer.

26.

While Stultz was employed at EMC, employment positions were posted on the internal web-based job/openings portal, where candidates submitted applications online.  Once the position was closed, Human Resources and the Hiring Manager reviewed applications to determine which candidates meet the requirements for the position and will be interviewed for the position.  Based upon the applications,

interviews, position requirements, and Branch needs, the Hiring Manager then selected candidates for employment positions.

27.

During the course of employment, EMC hired and promoted several Caucasian employees, who were significantly younger and possessed less experience, tenure, and knowledge than Stultz.  Despite the fact that these significantly younger Caucasians were significantly less experienced or knowledgeable than Stultz, EMC encouraged and promoted these individuals into management positions.  Although encouraging these significantly younger Caucasians to apply for employment positions, upper management never approached or encouraged Stultz concerning a promotion and, as such, Stultz remained as a Senior Risk Improvement Representative.

28.

In 2020, EMC's Executive Team was comprised exclusively of Caucasians— Meyer Lehman (Executive VP of Finance and Chief Actuary Officer), Todd Strother (Executive VP, Chief Legal Officer, and Secretary), Scott Jean (President and CEO), Elizabeth Nigut (Executive VP and Chief People Officer), Mick Lovell (Executive VP and COO), and Eric Faust (Executive VP and Chief Synergy Officer)—with the exception of Lovell, each were significantly younger than Stultz.

29.

As an example of EMC's efforts to employ and hire younger, Caucasian candidates with significantly less qualifications compared to Stultz, in 2019, EMC hired Jonathan Rearden ("Rearden")—Caucasian male in his early forties (40s). During the hiring process, EMC required Stultz to interview and encourage Rearden to join the company. Although Rearden had significantly less experience, including a total lack of common risk management or safety credentials, EMC hired Rearden as a Senior Risk Improvement Representative—the same position as Stultz.

30.

At EMC, Risk Improvement Managers typically possess more than a decade of professional experience with EMC, as well as significant experience in the insurance industry in multiple positions coupled with several certifications.

31.

Despite Stultz's education and years of stellar performance, as well as the preference for more experienced managers, EMC rapidly promoted Phillips (Caucasian male in his thirties (30s) who joined EMC in 2012), who possessed less experience, tenure, and knowledge than Stultz. On or about February 11, 2020, EMC announced that Phillips was promoted to Senior Risk Improvement Representative. Less than two months later on April 1, 2020, Phillips was again

promoted to Risk Improvement Manager despite the lack of risk management or safety credentials.

32.

When promoting Phillips to Risk Improvement Manager, EMC did not comply with the standard hiring practices and procedures.  In this regard, Johnson stated that the Birmingham Branch would report to one of the existing Risk Improvement Managers, likely Jim Janek ("Janek") in Charlotte or Kipp Rowland ("Rowland") in Cincinnati.  However, without advertising or posting the new position, EMC simply created a new Risk Improvement Manager position which was filled by Phillips, who lacked the professional experience and credentials possessed by Stultz, Janek, and Rowland.

33.

Because the Risk Improvement Manager position awarded to Phillips was neither posted nor advertised, Stultz was denied the opportunity and/or ability to apply for the vacant position.

34.

Once Phillips became EMC's Risk Improvement Manager, Stultz then reported to Johnson and Phillips, who became Stultz's direct supervisor.

35.

As a result of the COVID-19 Outbreak, EMC terminated Representative travel and, thus, rather than physically travelling to meet customers and sell insurance products, Representatives were required to conduct phone surveys and zoom meetings.  During this period, Stultz met with Phillips in zoom and in-person meetings to discuss the transition from "field to phone" and centralized scheduling. From Stultz' perspective, these meetings were productive and informative.

36.

EMC utilized a centralized scheduling system.  In this regard, Schedulers make appointments and generate drawings, *i.e.*, potential customers to visit.  During the course of Stultz's employment, EMC experienced significant turnover in the Centralized Scheduling Group.

37.

Layesha Beckish ("Beckish"), who served as an EMC Scheduler, consistently struggled with managing Stultz's and Rearden's workload.  Specifically, Beckish failed to schedule appointments in a timely fashion and to arrange drawings. Moreover, in 2020, Beckish was frequently absent with short notice, further hindering Stultz's professional performance.  During zoom conference meetings,

when issues related to Beckish and scheduling were discussed, Stultz was simply encouraged to discuss the issues with Beckish.

38.

Because Beckish failed to generate timely drawings, as a last resort to maintain the growth and momentum from the 2019 Year, Stultz began generating drawings, which required much more time and effort from Stultz.  In this regard, Stultz utilized EMC's centralized scheduling system to generate drawings, which were reviewed and accepted by EMC's professional reviewers in Des Moines, Iowa. Neither Beckish nor any other EMC employee took issue with, complained about, or stated that Stultz could not generate drawings.

39.

Unexpectedly, on or about April 30, 2020, Phillips scheduled a virtual meeting with Stultz, who assumed Phillips wanted to discuss Stultz's continued stellar performance and Stultz's recent drone program proposal.  However, after the commencement of the meeting with another human resources employee, Phillips surprisingly questioned, without warning, Stultz generation of drawings.  During a break, Stultz contacted Johnson, who did not know the purpose of the meeting. When returning to the meeting, Phillips asked Stultz about what EMC equipment Stultz possessed.  Ultimately, Phillips stated that Stultz's employment was being

terminated for "not utilizing the centralized drawing system," *i.e.*, not waiting for Beckish to make appointments.

40.

During the course of Stultz's employment with EMC, Caucasian EMC Representatives who were significantly younger than Stultz generated their own drawings without any known adverse employment actions and/or termination of employment.

41.

Despite EMC's practice consistent with other companies in the insurance industry, when terminating Stultz's employment, EMC did not offer Stultz, who had been employed with EMC since 2005, a severance package.

42.

When Stultz's employment was terminated, Stultz was the oldest employee at EMC's Birmingham Branch and approximately only ten percent (10%) of EMC's employees were ethnic and/or racial minorities.

43.

Although Stultz has diligently performed, EMC treated Stultz unequivocally and significantly less favorably than his younger, non-African-American co-workers who were in similar and comparable positions at the Birmingham branch.

## IV.  CLAIMS FOR RELIEF

### COUNT I:
### AGE DISCRIMINATION
### IN VIOLATION OF THE ADEA
**(Against Defendant EMC)**

44.

Stultz re-alleges and incorporates herein, by reference, the preceding Paragraphs as if set forth fully herein.

45.

The ADEA prohibits employers from, among other things, discriminating against and/or discharging an employee, who is at least 40 years of age, on the basis of age.

46.

At all relevant times, Stultz was in a protected age group, exceeding the age of forty (40) years old, and was qualified for the Senior Risk Improvement Representative and Risk Improvement Manager positions at EMC.

47.

At all relevant times, the relationship between Stultz and EMC was a relationship of "employee" to "employer" such that a cause of action exists where discrimination on the basis of age is alleged to be the cause of an adverse action directed to Stultz by EMC.

48.

At all relevant times, EMC acted by and through its agents and employees, including, but not limited to, Phillips, each of whom acted in the course and scope of their employment with and for EMC.

49.

Despite Stultz's experience and qualifications, EMC violated the ADEA by, *inter alia*, failing to promote Stultz to a management position and terminating Stultz's employment because of Stultz's age.

50.

Meanwhile, EMC has shown, and continues to show, favoritism to similarly situated, younger Representatives and other EMC employees.

51.

As a direct and proximate result of EMC's conduct, Stultz has suffered and will continue to suffer damages, including, but not limited to, emotional distress, inconveniences, loss of income and benefits, humiliation, and other indignities.

52.

Stultz is entitled to an award of back pay and benefits, injunctive relief, attorneys' fees, and all other appropriate damages, remedies, and other relief available under the ADEA and all federal statutes providing remedies for violations of the ADEA.

53.

Furthermore, EMC's conduct was "willful" as defined under the ADEA and, therefore, Stultz is entitled to liquidate damages in an amount equal to compensatory damages.

**COUNTS II & III**
**RACE DISCRIMINATION**
**IN VIOLATION OF TITLE VII AND SECTION 1981**
**(Against Defendant EMC)**

54.

Stultz re-alleges and incorporates herein, by reference, the preceding Paragraphs as if set forth fully herein.

55.

Title VII and Section 1981 prohibit employers from discriminating against an employee based upon, *inter alia*, race, ethnicity, and/o national origin.

56.

As an African-American male, Stultz is a member of a protected class under both Title VII and Section 1981.

57.

At all relevant times, Stultz was diligently performed and was qualified for the position of Senior Risk Improvement Representative and other management positions with EMC.

58.

At all times relevant to this action, the relationship between Stultz and EMC was a relationship of "employee" to "employer" such that a cause of action exists where discrimination on the basis of race is alleged to be the cause of an adverse action directed to the employee by the employer.

59.

During the course of Stultz's employment, EMC acted by and through its agents and employees, including, but not limited to, Phillips, each of whom acted in the course and scope of their employment with and for EMC.

60.

Stultz's education, experience, skill, and performance exceeded that of other non-African-American, similarly situated Employees employees, including, but not limited to, Phillips, Rearden, and Foster, and the other employees at the Birmingham branch whose employment were not terminated and who were afforded professional opportunities denied to Stultz.

61.

Despite Stultz's qualifications and experience, EMC intentionally discriminated against Stultz on the basis of his race by, *inter alia*, subjecting Stultz to unfair treatment compared to similarly-situated non-African-American employees, failing to promote Stultz into a management position, denying Stultz the same opportunities as similarly situated non-African-American Representatives, terminating Stultz's employment, as well as other unlawful actions based solely upon race and/or ethnicity.

62.

Stultz was treated less-favorably than similarly-situated non-African-American EMC employees in violation of Title VII and Section 1981.

63.

Defendants' conduct adversely impacted the terms, conditions, and privileges of Stultz's employment with EMC.

64.

Defendants' actions constitute unlawful race discrimination in violation of Title VII and Section 1981.

65.

Defendants willfully and wantonly disregarded Stultz's statutory rights and Defendants' discrimination was undertaken in bad faith.

66.

As a direct and proximate result of the above-described unlawful employment practices, Stultz has suffered and continues to suffer the indignity of race discrimination, the invasion of the right to be free from race discrimination, humiliation, emotional pain, mental distress, inconveniences and mental anguish, for which Stultz is entitled to recover.

67.

Defendants' intentional and illegal conduct entitles Stultz to compensatory damages, as well as any and all other remedies available under Title VII and Section 1981.

68.

Defendants' actions with regard to Stultz demonstrate willful misconduct, malice, fraud, wantonness, oppression, and a complete lack of care entitling Stultz to an aware of punitive damages to deter, punish, and penalize EMC for and from similar future conduct.

## <u>COUNT IV:</u>
## <u>INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS</u>
## <u>IN VIOLATION OF THE LAWS OF THE STATE OF GEORGIA</u>
### (Against Defendants EMC and Phillips)

69.

Stultz re-alleges and incorporates, by reference, each and every preceding Paragraph of the Complaint as if set forth fully herein.

70.

Defendants' statements, conduct, and behavior towards Stultz were intentional and reckless, extreme and outrageous, causing Stultz severe shame, humiliation, embarrassment, and emotional distress of a nature that no person should endure.

71.

Defendants' statements, conduct, and behavior towards Stultz demonstrate, among other things, a "retaliatory animus."

72.

At all relevant times, the Parties had a special, employer-employee relationship, wherein Defendants had control over Stultz and Stultz's income and/or livelihood during a Global COVID-19 Outbreak.

73.

When engaging in the intentional, reckless, extreme, and outrageous conduct towards Stultz, Defendants knew that Stultz was dependent upon the income received from EMC during the COVID-19 Outbreak.

74.

Defendants denied Stultz employment opportunities, hindered Stultz's professional opportunities and performance, forced Stultz to recruit lesser qualified, younger, and Caucasian candidates for positions sought by Stultz, and wrongfully terminated Stultz's employment based solely on race and age.

75.

Defendants knew or should have known that such conduct would result in the severe emotional distress suffered by Stultz.

76.

As a result of Defendants' conduct, Stultz has and will continue to suffer severe emotional distress and other damages for which Stultz is entitled to recover.

## COUNT V
## NEGLIGENT RETENTION AND SUPERVISION
## IN VIOLATION OF GEORGIA LAW
### (Against Defendant EMC)

77.

Stultz re-alleges and incorporates, by reference, each and every preceding Paragraph of the Complaint as if set forth fully herein.

78.

As a result of the actions taken by Defendants, Stultz is suffering, among other things, discrimination based on age and race.

79.

EMC owed Stultz a duty to hire, retain, and supervise employees who would lawfully conduct themselves and not engage in discriminatory and/or tortious conduct.

80.

By negligently retaining and supervising its employees, including, but not limited to Phillips, EMC breached its duty to hire, retain, and supervise employees who would lawfully behave.

81.

EMC knew or, in the exercise of ordinary diligence, should have known of the propensity of its employees, to engage in unlawful conduct against Stultz.

82.

By failing to engage in any corrective or remedial action, EMC ratified, condoned, and/or adopted its employees' unlawful conduct.

83.

As a direct and proximate result of EMC's negligent retention and supervision of its employees, as well as the failure to take any remedial or corrective action with respect to the known unlawful actions taken by employees, including, but not limited to, Phillips, Stultz suffered damages.

84.

EMC's negligent conduct entitles Stultz to compensatory damages, punitive damages, as well as any and all other remedies available under the law.

## **PRAYER FOR RELIEF**

**WHEREFORE,** Plaintiff respectfully demand a trial by jury and request the following relief:

(a)    That the Clerk of the Court issue summons and original process, served upon Defendants and any other person or entity the Court deems necessary in accordance with the law;

(b)    That the Court grant declaratory judgment that Stultz's rights under, among other laws, the ADEA, Section 1981, and Title VII were violated;

(c)    That the Court award Stultz compensatory damages for all injuries suffered as a result of Defendants' unlawful conduct;

(d)    That the Court award back pay, including, but not limited to, unpaid back wages, lost income, bonuses, incentive compensation, pension, social security, and other benefits in amounts to be shown at trial;

(e)    That the Court award liquidated damages equal to back pay and lost benefits based upon Defendants' willful violations of the ADEA, Section 1981, and Title VII;

(g)     That the Court award punitive damages in an amount reasonable and

commensurate with the harm done and calculated to be sufficient to

deter such future conduct;

(h)     That the Court award pre-judgment interest on any monetary award;

(i)     That the Court grant a trial by jury as to all triable issues of fact; and

(j)     Further and additional relief as may be just and appropriate.

Respectfully submitted, this 29th day of April, 2021.

MOLDEN & ASSOCIATES

 */s/ Regina S. Molden*
REGINA S. MOLDEN
Georgia Bar No. 515454
T. ORLANDO PEARSON
Georgia Bar No. 180406
YIYING ZHANG
Georgia Bar No. 798231
Peachtree Center – Harris Tower, Suite 1245
233 Peachtree Street, NE
Atlanta, Georgia 30303
(404) 324-4500
(404) 324-4501 (facsimile)
Email:  rmolden@moldenlaw.com
Email:  topearson@moldenlaw.com
Email:  azhang@moldenlaw.com

*Counsel for Plaintiff William R. Stultz, III*

**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION**

| | |
|---|---|
| WILLIAM R. STULTZ, III, | |
| Plaintiff, | |
| vs. | CIV. ACTION NO._____ |
| EMPLOYERS MUTUAL CASUALTY COMPANY, doing business as EMC Insurance, and STEVE PHILLIPS, | **JURY TRIAL DEMANDED** |
| Defendants. | |

## LOCAL RULE AND SERVICE CERTIFICATION

The undersigned counsel certifies that this document has been prepared in accordance with the Local Rules and that the foregoing Complaint for Damages has been filed with the Clerk using the CM/ECF system which will notify the attorney(s) of record.

Respectfully submitted, this 29th day of April, 2021.

MOLDEN & ASSOCIATES

*/s/ T. Orlando Pearson*
REGINA S. MOLDEN
Georgia Bar No. 515454
T. ORLANDO PEARSON
Georgia Bar No. 180406